# STATE OF MICHIGAN

# COURT OF APPEALS

FIFAREK HOUSE TRUST,

Petitioner-Appellant,

v

TOWNSHIP OF LONG LAKE,

Respondent-Appellee.

UNPUBLISHED
March 7, 2017

No. 330489
Tax Tribunal
LC No. 15-000793-TT

Before: RONAYNE KRAUSE, P.J., and O'CONNELL and METER, JJ.

PER CURIAM.

Petitioner appeals as of right from a final opinion and judgment of the Michigan Tax Tribunal denying its appeal regarding the valuation of real property located at 1949 South Long Lake Road North in Grand Traverse County. We affirm.

On March 25, 2015, respondent sent to petitioner a document entitled "Assessor Affidavit Regarding 'Uncapping' of Taxable Value." The document indicated that, for the 2015 tax year, the taxable value of the property at issue would be "corrected" and increased from $134,981 to $222,600.[1] John R. Fifarek, a principal of Lasky Fifarek, P.C., and the trustee for petitioner, sent a letter to respondent on April 9, 2015, stating, in part, that (1) the trustee held the property after the death of Robert Fifarek on August 14, 2014; (2) the trustee published the required Notice to Creditors on September 11, 2014; (3) the statutory four-month period for creditors to make claims against the trust expired on January 11, 2015; (4) thus, no conveyance from the trust could have occurred until after that date; and (5) at any rate, no transfer of assets from the trust had yet occurred at all. The trustee therefore argued that no transfer of ownership occurred in

---

[1] MCL 211.27a(3) provides: "Upon a transfer of ownership of property after 1994, the property's taxable value for the calendar year following the year of the transfer is the property's state equalized valuation for the calendar year following the transfer." This statute provides for an "uncapping" of the limit on increases in taxable value provided by Proposal A in 1994, which amended Const 1963, art 9, § 3.

2014 and respondent erred in basing its "corrected" taxable value on the assumption that a transfer occurred in 2014.[2]

Petitioner filed an appeal with the Small Claims Division of the Michigan Tax Tribunal. Respondent replied on May 29, 2015. The assessor, Angela Friske, stated, "I have consistently uncapped the taxable value the year following the change of primary beneficiaries (unless to include or exclude spouse) as the beneficial use of the property transfers to the succeeding beneficiaries." She indicated that she uncapped the taxable value based on MCL 211.27a(6)(e), which states:

> (6) As used in this act, "transfer of ownership" means the conveyance of title to or a present interest in property, including the beneficial use of the property, the value of which is substantially equal to the value of the fee interest. Transfer of ownership of property includes, but is not limited to, the following:

> (e) A change in the sole present beneficiary or beneficiaries of a trust, except under any of the following conditions:

> (*i*) A change that adds or substitutes the spouse of the sole present beneficiary.

> (*ii*) Beginning December 31, 2014, for residential real property, a change that adds or substitutes the settlor's or the settlor's spouse's mother, father, brother, sister, son, daughter, adopted son, adopted daughter, grandson, or granddaughter and the residential real property is not used for any commercial purpose following the conveyance. Upon request by the department of treasury or the assessor, the sole present beneficiary or beneficiaries shall furnish proof within 30 days that the sole present beneficiary or beneficiaries meet the requirements of this subparagraph. If a present beneficiary fails to comply with a request by the department of treasury or assessor under this subparagraph, that present beneficiary is subject to a fine of $200.00.[3]

She indicated that Robert Fifarek died before December 31, 2014, and thus MCL 211.27a(6)(e)(*ii*) had not been triggered.

In a brief filed with the tribunal on September 16, 2015, petitioner argued, in part, that the assessor erred in relying on MCL 211.27a(6)(e) because there had simply been no changes in the

---

[2] We note that, in his letter, the trustee made an additional argument, concerning MCL 211.27a(6)(d), but petitioner has not advanced this argument on appeal.

[3] This is the current version of MCL 211.27a(6)(e), enacted by 2014 PA 310. At the time of Robert's death, MCL 211.27a(6)(e) simply stated that a transfer of ownership included "[a] change in the sole present beneficiary or beneficiaries of a trust, except a change that adds or substitutes the spouse of the sole present beneficiary."

beneficiaries of the trust. Petitioner argued that this would have required an amendment to the trust and that such an amendment had not occurred.

The tribunal issued a final opinion and judgment, ruling for respondent, on November 13, 2015. The tribunal stated that the dispositive statute was MCL 211.27a(6)(e). The tribunal concluded that, under this statute, a "change in the sole present beneficiary or beneficiaries of a trust" constitutes "[t]ransfer of ownership of property," and the potential exception in MCL 211.27a(6)(e)(*ii*) did not apply because Robert Fifarek died before December 31, 2014. The tribunal stated:

> Petitioner's contention that a change in beneficiaries requires an officially executed amendment is without merit. Nothing in the plain language of MCL 211.27a(6)(e) suggests that the Legislature intended any such requirement. Instead, the language, particularly the opening phrase, acknowledges that there is not one singular method for effecting a change in beneficiaries, and indicates that any event triggering such a change is sufficient to constitute a transfer of ownership.

The tribunal further held that statutes excluding from the phrase "transfer of ownership" the transfer of residential real property to certain relatives, see MCL 211.27a(7), did not apply because the statutes addressed "different types of conveyances," whereas MCL 211.27a(6)(e) specifically and dispositively addressed the issue in the present case: a change in the beneficiaries of a trust.

"Review of decisions by the Tax Tribunal is limited." *Michigan Properties*, *LLC v Meridian Twp*, 491 Mich 518, 527; 817 NW2d 548 (2012). "The Tax Tribunal's factual findings are final if they are supported by competent, material, and substantial evidence on the whole record." *Id*. "If the facts are not disputed and fraud is not alleged, our review is limited to whether the Tax Tribunal made an error of law or adopted a wrong principle." *Id*. at 527-528. As in *Michigan Properties*, the present case involves statutory interpretation, which we review de novo. *Id*. at 528.

> When interpreting statutes, this Court must ascertain and give effect to the intent of the Legislature. In interpreting a statute, this Court avoids a construction that would render any part of the statute surplusage or nugatory. When considering the correct interpretation, the statute must be read as a whole. Individual words and phrases, while important, should be read in the context of the entire legislative scheme. [*Id*. (citations and quotation marks omitted).]

Petitioner makes two primary arguments on appeal. It first argues, as it did below, that no transfer of ownership of the property took place. Petitioner states that it was impossible for a transfer to have occurred before January 2015, because, in compliance with applicable laws, the trustee published the required Notice to Creditors on September 11, 2014, and the four-month statutory period, see MCL 700.3801 and MCL 700.7607, expired on January 11, 2015. Petitioner argues that property could not be distributed from the trust until after January 11, 2015. Petitioner contends that, contrary to the tribunal's conclusion, there was no "transfer of ownership" under MCL 211.27a(6)(e) when Robert died because that statute specifically refers

-3-

to a "change" that adds or substitutes parties, and no such "change" to the trust occurred here. Petitioner further notes that the trust specifically states that the trustee was to determine whether to sell the real estate and distribute the proceeds to Robert's children or whether to convey the real estate to the children. Petitioner indicates that the trustee had not yet done so and could not have done so before January 2015 because, among other reasons, the trustee was waiting for the four-month period to expire and was also waiting to assess the health of his ill sister.

Petitioner's second appellate argument is that, even assuming, arguendo, that Robert's death in 2014 somehow resulted in an "automatic transfer of ownership," an exemption from uncapping remained in place under MCL 211.27a(7)(t)—formerly MCL 211.27a(7)(s)—which states:

Transfer of ownership does not include the following:

* * *

Beginning December 31, 2013 through December 30, 2014, a transfer of residential real property if the transferee is related to the transferor by blood or affinity to the first degree and the use of the residential real property does not change following the transfer.

We will first address the second argument raised by petitioner. At the time of Robert's death, MCL 211.27a(7)(s) stated that "transfer of ownership" did not include:

Beginning December 31, 2013, a transfer of residential real property if the transferee is related to the transferor by blood or affinity to the first degree and the use of the residential real property does not change following the transfer. As used in this subdivision, "residential real property" means real property classified as residential real property under section 34c.

2014 PA 310, effective October 10, 2014, changed the wording to that of the current statute, adding the end date of "December 30, 2014," and adding a section, currently labeled MCL 211.27a(7)(u), also exempting, beginning December 31, 2014, a transfer of residential real property "if the transferee is the transferor's or the transferor's spouse's mother, father, brother, sister, son, daughter, adopted son, adopted daughter, grandson, or granddaughter and the residential real property is not used for any commercial purpose following the conveyance."[4] 2014 PA 310, as noted earlier, also amended MCL 211.27a(6)(e) by adding subsection MCL 211.27a(6)(e)(*ii*), which states, in pertinent part, that a transfer of ownership of property includes a change in the sole present beneficiary or beneficiaries of a trust, except:

Beginning December 31, 2014, for residential real property, a change that adds or substitutes the settlor's or the settlor's spouse's mother, father, brother,

---

[4] 2014 PA 310 also added a section, with similar wording, concerning "a *conveyance* from a trust . . . ." See current MCL 211.27a(7)(v) (emphasis added).

sister, son, daughter, adopted son, adopted daughter, grandson, or granddaughter and the residential real property is not used for any commercial purpose following the conveyance.

We are to avoid interpretations of statutes that would lead to surplusage. *People v Juntikka*, 310 Mich App 306, 309; 871 NW2d 555 (2015). In 2014 PA 310, the Legislature was clearly viewing the "transfer of residential real property" provision as something separate from a trust beneficiary change related to real property, because otherwise there would have been no need to enact both MCL 211.27a(6)(e)(*ii*) and what is currently MCL 211.27a(7)(u).

At the time of Robert's death, the statues at issue, read together, provided (as applied to this appeal) that a transfer of ownership included a change in the sole beneficiaries of a trust but, commencing December 31, 2013, did not include a transfer of residential real property from a parent to a child. That a change in the sole beneficiaries of a trust and a transfer of residential real property were intended by the Legislature to be two separate concepts is evident not only from the wording of the statutes at the time ("[a] change in the sole present beneficiary or beneficiaries of a trust" versus "a transfer of residential real property") but also from the subsequent enactment of 2014 PA 310. Accordingly, we cannot find that the tribunal erred in finding that two different types of conveyances were at issue and that MCL 211.27a(7) does not entitle petitioner to the relief it sought.

The remaining question, then, is whether Robert's death effected a "change in the sole present beneficiary or beneficiaries of a trust" such that a transfer of ownership occurred. The trust indicates at Article 3 that Robert Fifarek and Dorothy Fifarek had the right to withdraw any asset from the trust and indicates at Article 5 that "[a]ny income generated by the Trust assets shall be distributed to us no less than quarter-annually . . . ." Clearly, Robert and Dorothy were the initial beneficiaries of the trust. The parties do not dispute that Robert was "the survivor" as set forth in Article 6. Article 6 states that, "[a]s soon as practicable following the death of the survivor of us, the Trust assets shall be distributed outright to our children . . . ." Article 6 further states, "Neither the principal nor the income of the Trust shall be liable for the debts of a beneficiary, and no beneficiary shall have the power to sell, assign, transfer, encumber, hypothecate, dispose of, or anticipate his or her interest in the Trust assets." It is manifestly evident that upon Robert's death, the children became the beneficiaries of the trust, given that Dorothy and Robert were no longer alive. As such, a "change" in beneficiaries did indeed occur. As noted, MCL 211.27a(6) states that a transfer of ownership includes the conveyance of "the beneficial use of the property . . . ." The children obtained this "beneficial use" after the death of Robert. As noted by respondent, it is clear that if Robert had died on December 31, 2014, or afterwards, then uncapping would have been disallowed under MCL 211.27a(6), but unfortunately for petitioner, the Legislature saw fit to effectuate its new policy related to trusts on that date—December 31, 2014—and not earlier. The tribunal did not commit an error of law.

-5-

Affirmed.


/s/ Peter D. O'Connell
/s/ Patrick M. Meter